**SMITH & FAWER, L.L.C.**
**RANDALL A. SMITH (La. #2117)**
**MICHAEL W. HILL (La. #25415)**
201 St. Charles Avenue, Suite 3702
New Orleans, Louisiana 70170
Tel: 504-525-2200

**Of Counsel to SpatiaLight, Inc.**

**LAW OFFICES OF DAVID M. SCHREIER**
**DAVID M. SCHREIER (DS2112)**
274 Madison Avenue, 19th Floor
New York, New York 10016
Tel: 212-889-0686

**Counsel for SpatiaLight, Inc.**

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| **SPATIALIGHT, INC.,** | * | |
| Plaintiff | * | |
| | * | **07 cv 6944** |
| | * | **Judge Preska** |
| v. | * | |
| | * | |
| | * | **ORIGINAL COMPLAINT** |
| **SMITHFIELD FIDUCIARY, L.L.C.,** | * | |
| and | * | |
| **PORTSIDE GROWTH** | * | |
| **& OPPORTUNITY FUND** | * | |
| Defendant | * | **ECF CASE** |
| | * | |

******************************************

## PRELIMINARY STATEMENT

      **NOW INTO COURT**, comes SpatiaLight, Inc. (hereafter "SpatiaLight"). SpatiaLight suggests that Defendants Smithfield Fiduciary, L.L.C. (hereafter Smithfield") and Portside

Growth & Opportunity Fund (hereafter "Portside")(hereafter Portside and Smithfield may be referred to collectively as "Defendants") are truly and justly indebted unto it, and that SpatiaLight further requires injunctive relief to prevent Defendants from forcing it into a potentially illegal transaction to SpatiaLight's irreparable detriment.  Thus SpatiaLight, as and for its *Complaint* against Defendants, alleges as follows:

**Parties**

  1. Plaintiff herein is SpatiaLight, a corporation organized under the laws of the State of New York with its principal place of business in Novato, California.

  2. Defendant herein is Smithfield.  Upon information and belief, Smithfield is a limited liability company organized under the laws of the Cayman Islands with its principal place of business in New York, New York.  Upon further information and belief, at all times relevant hereto, Smithfield was and remains a wholly-owned subsidiary of Highbridge Capital Management, L.L.C., a limited liability company organized under the laws of the Cayman Islands with its principal place of business in New York, New York.

  3. Defendant herein is Portside.  Upon information and belief, Portside is a company organized under the laws of the Cayman Islands with its principal place of business in New York, New York.

**Jurisdiction and Venue**

  4. This Court has subject matter jurisdiction over this action for market manipulation pursuant to 15 U.S.C. §78aa and 28 U.S.C. §1331.

  5. Venue is proper in this Court over this action pursuant to 15 U.S.C. §78aa and 28 U.S.C. §1391.

**Factual Background**

6.     At all times relevant hereto, SpatiaLight was and remains a publicly traded company. Prior to June 15, 2007, SpatiaLight traded under the "HDTV" symbol on the NASDAQ SmallCap Exchange. SpatiaLight currently trades on the Pink Sheets, L.L.C. and NASDAQ Over-the-Counter Bulletin Board Markets. SpatiaLight is, and at all times relevant hereto has been, an issuer of securities in SpatiaLight, Inc. Furthermore, at all times relevant hereto, SpatiaLight has sold shares of its stock on the basis of and in reliance on the information and market value set by the share price of SpatiaLight stock on the relevant exchanges.

**The Securities Purchase Agreement**

7.     On or about November 30, 2004, SpatiaLight entered into a *Securities Purchase Agreement* and *Registrations Rights Agreement* with, *inter alia*, Smithfield and Portside. These two (2) Agreements were executed in conjunction with the execution by SpatiaLight of a *Senior Secured Convertible Note* in favor of a number of investors that included Smithfield and Portside.

8.     As part of the November 30, 2004 *Securities Purchase Agreement*, Smithfield purchased $4,500,000 worth of 10% Convertible Debentures (hereafter "Debentures") from SpatiaLight. Portside also purchased $4,500,000 worth of Debentures from SpatiaLight. These Debentures are variable securities sometimes known as "toxic debentures," or a form of "death spiral financing" as is further described herein.

9.     The Debentures require SpatiaLight to pay interest on the Debentures "in arrears on the last day of each February, May, August and November during the period beginning on the Issuance Date and ending on, and including, the Maturity Date." The Debentures permit the

interest to be paid in either cash or in what the Debentures term "Interest Shares", that being shares of fully paid and nonassessable shares of common stock of SpatiaLight. According to the terms of the Debenture:

> Interest to be paid on an Interest Date in Interest Shares shall be paid in a number of fully paid and nonassessable shares (rounded to the nearest whole share in accordance with section 3(a)) of common stock to the quotient of (a) the amount of Interest payable on such Interest Date and (b) the Interest Conversion Price in effect on the applicable Interest Date.

The Debentures further define "Interest Conversion Price" as the lesser of "(i) the Conversion Price [$9.72] or (ii) that price which shall be computed as 95% of the arithmetic average of the Weighted Average Price of the Common Stock on each of the ten (10) consecutive Trading Days commencing two (2) Trading Days after the Interest Notice Due Date and ending on the third Trading Day immediately preceding the applicable Interest Date." "Weighted Average Price" means "the dollar volume-weighted average price for such security on the Principal Market during the period beginning at 9:30:01 A.M., New York Time. . .and ending at 4:00:00 P.M., New York Time" on the relevant Trading Days.

      10.     Section 3(d)(1) of the Secured Convertible Note states that the holder of the note will not "beneficially own in excess of 4.99% of the number of shares of Common Stock outstanding" immediately after the conversion. This was intended as an affirmative limitation on the ability of each Defendant to acquire control of the company. Upon information and belief, this representation was false at the time it was made by Defendants, and Defendants in fact purchased the Debentures with the intention of acquiring substantial control of SpatiaLight through the exercise of their conversion and redemption rights, including an affirmative plan to

have the Board of Directors of SpatiaLight waive the restriction on ownership at the request of Defendants.

11. Because the *Notes* tie the "Interest Conversion Price" to the lesser of $9.72 or the Weighted Market Price of SpatiaLight stock, the *Notes* gave Portside and Smithfield a substantial incentive to depress the value of SpatiaLight stock in the time period relevant to the calculation of the Interest Conversion Price. If SpatiaLight fell short of cash and had to give notice of its intent to pay interest in Interest Shares, the amount of common stock that would be owned by Defendants upon payment of those Interest Shares would incrementally increase as SpatiaLight's then-current common stock trading price decreased. In other words, if 95% of the Weighted Average Price of SpatiaLight common stock immediately preceding payment of Interest Shares was, for example, $9.00 per share, then Defendants would receive one (1) share of SpatiaLight common stock for every $9.00 worth of debt. However, if 95% of the Weighted Average Price of SpatiaLight's common stock immediately preceding conversion was 50% less than $9.00 per share, *i.e.*, $4.50 per share, then Defendants would instead receive two (2) shares of SpatiaLight common stock for every $9.00 worth of debt. Thus, Defendants stood to gain exponentially more SpatiaLight common stock in the event that the trading value of SpatiaLight's common stock decreased, particularly if the SpatiaLight common stock received upon conversion could be used to cover their short positions, or if the decline in SpatiaLight's stock price was severe enough such that they would not need immediately to cover their short positions.

12. The possibility of acquiring more SpatiaLight common stock through payment of Interest Shares in a depressed market imbued Defendants with the motive to depress the trading value of SpatiaLight's common stock prior to the date on which interest was due on the

SpatiaLight Debentures. Given that they were in a position to do so without detection, they likewise possessed sufficient opportunity to execute this plan.

13. In the two months preceding the date that the *Securities Purchase Agreement* was executed and the Debentures were purchased, SpatiaLight stock was trading at between $5.32 and $9.21, with a high sale price of $9.21 on November 21, 2004 and a high close price of $8.99 on November 30, 2004.

**Smithfield and/or Portside's Attempt at Market Manipulation**

14. Upon information and belief, after Defendants entered into the *Securities Purchase Agreement* and acquired the Debentures, and immediately preceding the dates on which interest payments fell due, Defendants began a concerted scheme of "short selling" SpatiaLight common stock on the NASDAQ SmallCap market, with the intention of driving down SpatiaLight's common stock price such that (a) SpatiaLight would not have sufficient liquidity to redeem the Debentures for cash, and (b) Defendants could acquire exponentially more common stock upon conversion of the Debentures.

15. The first interest payment was due to each Defendant from SpatiaLight on February 28, 2005.

16. As of December 15, 2004, 4,070,923 shares of SpatiaLight had been sold short over the preceding thirty (30) days. Over the course of the next year, SpatiaLight stock was short an exponentially greater amount of shares, with the short ratio increasing beyond the ratio obtained during the ordinary course of trading. Upon information and belief, Defendants were involved in or directed the short sale of some or all of the 4,070,923 shares sold short during this period.

17. Specifically, the shares of SpatiaLight sold short took the following trend:

| Date | Short Int | Short Ratio |
| --- | --- | --- |
| 10/15/2004 | 2479677 | 4.77 |
| 11/15/2004 | 3180262 | 3.62 |
| 12/15/2004 | 4070923 | 5.30 |
| 1/15/2005 | 5470990 | 5.71 |
| 2/15/2005 | 5949063 | 9.93 |
| 3/15/2005 | 5841230 | 16.07 |
| 4/15/2005 | 6283193 | 32.43 |
| 5/15/2005 | 6111851 | 24.72 |
| 6/15/2005 | 6477554 | 17.06 |
| 7/15/2005 | 6572901 | 23.89 |
| 8/15/2005 | 7371434 | 15.36 |
| 9/15/2005 | 7844630 | 24.55 |
| 10/15/2005 | 7848139 | 19.16 |
| 11/15/2005 | 7647015 | 25.95 |
| 12/15/2005 | 7596898 | 23.29 |
| 1/15/2006 | 8289385 | 14.29 |
| 2/15/2006 | 7629960 | 20.06 |
| 3/15/2006 | 7336699 | 14.26 |
| 4/15/2006 | 6780714 | 13.06 |

| | | |
|---|---|---|
| 5/15/2006 | 7146143 | 26.23 |
| 6/15/2006 | 4498005 | 26.7 |
| 7/15/2006 | 3237374 | 6.25 |
| 8/15/2006 | 2912891 | 13.08 |
| 9/15/2006 | 2779915 | 19.13 |
| 10/15/2006 | 2337905 | 8.35 |
| 11/15/2006 | 2202598 | 9.99 |
| 12/15/2006 | 1778851 | 7.31 |
| 1/15/2007 | 1316533 | 5.73 |
| 2/15/2007 | 1465873 | 6.95 |
| 3/15/2007 | 1460517 | 4.92 |
| 4/15/2007 | 1054438 | 1.80 |

18.     The number of shares sold short and the short interest ratio of the SpatiaLight shares spiked at the beginning of the measurement period to determine the number of shares SpatiaLight would have to surrender to Defendants in lieu of cash payment of interests, but then subsided towards the end of that period.  Short interest ratio is the number of shares sold short but not yet "covered" by the short seller.  A large short interest ratio means that an individual or individuals have sold a large number of shares short but have not yet re-purchased the shares, on the speculation that the stock will go lower and the shares can therefore be re-purchased at a lower rate.

19.     The trend demonstrated by the SpatiaLight trading history shows unusually large changes in the short positions of investors simultaneous with the dates on which interest

payments were due Defendants by SpatiaLight. It further shows the short sale trading increased immediately prior to the dates for interest payments but that the short positions were covered–and the shares sold short declined slightly–after that calculation period passed.

20. Furthermore, the trading volume of SpatiaLight shares shows unusual activity during the time periods immediately preceding the interest due dates. The volume trading during the time period for the Interest Conversion rate calculation often doubled the trading volume experienced under ordinary trading conditions.

21. While extraordinarily high trading volume often indicates that institutional investors in a company are buying or selling that company's common stock, upon information and belief, SpatiaLight's institutional investors were not responsible for the vast majority of the extraordinary volume of trading in SpatiaLight's common stock described herein.

22. Upon information and belief, the extraordinarily high volume trading of SpatiaLight's common stock reflected, in whole or in substantial part, the fact that Defendants were engaged in their concerted scheme to depress SpatiaLight's common stock trading price by engaging in substantial "short selling" of SpatiaLight's common stock.

23. Upon information and belief, the extraordinary trading volume of SpatiaLight common stock during the time period surrounding the Interest Conversion Rate calculations was a direct reflection of Smithfield and/or Portside's ongoing practice of taking substantial short positions in SpatiaLight's common stock, with the intention of depressing the trading value of Spatialight's common stock in the critical and determinative calculation period, all in hopes of acquiring substantially more SpatiaLight common stock as a result of the depressed trading price.

**Smithfield Acts in Concert with Portside**

24. Upon information and belief, Smithfield traded as a group with Portside.

25. Upon information and belief, Portside and Smithfield have traditionally alternated their receipt of information concerning participation in new issues of stock executed by SpatiaLight to acquire additional revenue. As creditors of the company, Smithfield and Portside have rights to participate in the purchase of these new shares in preference to the rights of the general public. Because the knowledge that SpatiaLight is about to sell new stock is inside information until disclosed, however, Portside and Smithfield are precluded from trading on the information until it becomes publicly available. To avoid this problem, it is alleged upon information and belief that Portside and Smithfield agreed that only one would receive the information concerning new issues in each round of sales, with the other declining to receive the information. This declination allowed the declining party to trade freely in SpatiaLight according to what is believed to be a pre-existing arrangement between Smithfield and Portside.

26. Portside and Smithfield have both sought to convert their debt at approximately the same time and using the same default rationale.

27. Upon information and belief, Portside and Smithfield have engaged the same law firm–Schulte, Roth & Zabel–to represent them in connection with the purchase and liquidation of the SpatiaLight debt.

28. Upon information and belief, Portside and Smithfield have jointly negotiated with SpatiaLight and others concerning their conversion of the Debentures and the possibility of liquidating the debts owed to the two (2) entities.

29. Upon information and belief, Portside and Smithfield have taken a number of other actions, in concert with one another, which actions provided economic benefit to one entity while providing a detriment to the other entity. These concerted actions would only make sense in the presence of an agreement by the pair to trade as a group for purposes of acquiring SpatiaLight.

**SpatiaLight is Damaged by Portside and Smithfield's Activities**

30. Between January 1, 2005 and the present, SpatiaLight shares have reduced in value from a closing price of $8.95 per share to a closing price as of July 23, 2007 of $.03. The drop in the value of the shares has substantially reduced the amount of equity capital which SpatiaLight can raise through private or public offerings of its common stock. This damage was caused, upon information and belief, by the short selling activities of Defendants.

**Smithfield and Portside Attempt to Further Harm SpatiaLight**

31. On July 12, 2007, Portside tendered a Notice of Conversion to SpatiaLight in which it requested the conversion of $100,000 of the Debentures previously acquired by it. This Notice came on the heels of the de-listing of SpatiaLight from the NASDAQ SmallCap Market, a de-listing occasioned by a drop in equity which on information and belief was caused in whole or in part by the short selling activities of Portside and/or Smithfield. Upon information and belief, Portside intends to convert all of its Debentures without regards to the cap on ownership placed by the *Securities Purchase Agreement*, and is thus seeking to complete its acquisition of SpatiaLight–in concert with Smithfield and subject to a common goal that Smithfield and Portside would share management of the company--and thus obtain the original objective it had when it entered into the Securities Purchase Agreement in November of 2004.

32. On July 17, 2007, Smithfield tendered a Notice of Conversion to SpatiaLight in which it requested the conversion of $50,000 of the Debentures previously acquired by it. Upon information and belief, Smithfield is also seeking to complete its acquisition of SpatiaLight–in concert with Portside and subject to a common goal that Smithfield and Portside would share management of the company--and thus obtain the original objective it had when it entered into the *Securities Purchase Agreement* in November of 2004.

33. Upon information and belief, as the time came for Portside and Smithfield to realize their common objective of taking control of SpatiaLight, their activities–and particularly those of Smithfield–demonstrated the true goal of their loan and subsequent short and long selling in violation of SEC rules. Since July 17, 2007, trading in SpatiaLight stock has taken the following trend:

| Date | Closing | Volume |
| --- | --- | --- |
| 7/17/07 | .06 | 688,400 |
| 7/18/07 | .04 | 2,696,200 |
| 7/19/07 | .04 | 1,021,800 |
| 7/20/07 | .03 | 3,299,800 |
| 7/23/07 | .03 | 2,906,500 |

This volume is substantial and it demonstrates a downward spiral of the value of the shares that would not have been encountered in normal trading conditions.

34. Upon information and belief, a significant portion of the share volume traded in SpatiaLight between July 17, 2007 and July 23, 2007 consisted of non-institutional investors

taking short positions in SpatiaLight stock and/or selling SpatiaLight stock long, in violation of SEC rules.

35. Upon information and belief, the non-institutional investors selling SpatiaLight stock–whether short or long--are Defendants. Although the Conversion Date for the Smithfield and Portside shares has not yet matured, Smithfield has continually called SpatiaLight in the days immediately preceding the filing of this Complaint and has demanded that SpatiaLight immediately tender it the requisite Conversion Shares. On no fewer than three (3) occasions on July 23, 2007, Adam Chill of Smithfield contacted the office of Dr. David Hakala–the CEO of SpatiaLight–asking when SpatiaLight was due to convert pursuant to Smithfield's notice. Upon information and belief, this incessant attempt to gain stock immediately was due to the short or long sale position that Smithfield–either acting individually or in concert with Portside–had accumulated in the market.

36. Upon information and belief, the only economic motivation available to Defendants for depressing the value of the SpatiaLight stock is to acquire a more substantial position in that stock upon actual conversion of the shares. Defendants have to-date only demanded conversion of a portion of their debt at a price locked-in on the date of the conversion notice. Yet, by selling either short or long and artificially depressing the value of the stock, Defendants may convert for a greater number of shares at a subsequent date. In light of their desire to have the SpatiaLight Board of Directors waive the ownership cap and permit them to convert all of their debt into common stock, it is in Defendants' best interest to insure that the

conversion price is as low as possible.  Smithfield and Portside can only accomplish this objective by artificially depressing the price of the stock below that prevalent in ordinary market conditions.

**Count One: Market Manipulation Against Smithfield and Portside**

37.  SpatiaLight repeats and re-alleges all allegations contained in Paragraphs "1" through "36" as if more fully set forth at length hereat.

38.  SpatiaLight is an issuer of securities and also a seller of its own securities as those terms are defined by Section 10b-5 of the Securities and Exchange Act of 1934 and its corresponding interpretive jurisprudence.

39.  As described herein, Smithfield and/or Portside made misrepresentations and omissions of material facts, and employed a scheme to intentionally mislead SpatiaLight and others, specifically, by engaging in massive short selling of SpatiaLight stock with the intention and effect of depressing its value to increase the number of shares that Defendants would receive upon payment of the interest on their Debentures in Interest Shares, in violation of Section 10(b) of the Securities and Exchange Act of 1934, 15 U.S.C. §78j(b), and Rule 10b-5, 17 C.F.R. §240.10b-5.

40.  The foregoing scheme, misrepresentations and omissions were made in connection with the purchase or sale of securities.  Defendants had substantial motive and opportunity to artificially depress SpatiaLight's trading price on the dates detailed above to reap substantial benefits for itself.  Alternatively, Defendants' conduct was highly unreasonable and

an extreme departure from the standards of ordinary care such that the consequences of their actions were known to them, or in the very least, were so obvious that Defendants must have been aware of them, such that they acted in a reckless fashion as that term is defined by the Exchange Act, its interpretive jurisprudence, and the Private Securities Litigation Reform Act, 15 U.S.C. § 78u-4.

41.     Upon information and belief, the foregoing scheme, misrepresentations and omissions were furthered by Defendants' use of interstate wires and the facilities of NASDAQ.

42.     SpatiaLight justifiably relied upon the misrepresentations and omissions made by Smithfield and Portside in the *Securities Purchase Agreement* and *Senior Secured Convertible Note* in issuing SpatiaLight common stock and buying and selling said stock.

43.     As a result of the market manipulation and reliance described herein, SpatiaLight has suffered damages equal to the diminution of the value per share of SpatiaLight stock from the inception of the *Securities Purchase Agreement* and the *Senior Secured Convertible Note* to the present.

**Count Two: Request for Injunctive Relief**

44.     SpatiaLight repeats and re-alleges the allegations contained in Paragraphs "1"-"36" as if more fully set forth hereat.

45.     Contrary to the representations made in the *Securities Purchase Agreement*, Defendants' primary objective, goal and purpose in entering into the *Agreement* was to acquire

control of SpatiaLight, either individually or acting as a group and/or in concert with one another.

46. Defendants are on the cusp of achieving that hidden goal, having demanded the partial conversion of their Debentures into SpatiaLight stock. It is believed that Defendants intend to seek a full conversion of their Debentures by forcing SpatiaLight to waive the limitation on percentage ownership contained in the *Securities Purchase Agreement* such that Defendants may obtain a significant majority of the outstanding shares of SpatiaLight.

45. If Defendants force the conversion described above, they will lock up majority ownership of SpatiaLight and will be able to completely control the corporate decisions of SpatiaLight. Defendants will be able to operate SpatiaLight without regards to the welfare of the other shareholders and without regards to the employees, creditors and other individuals and entities dependent upon SpatiaLight. They will further have obtained the goal of its market manipulation in a manner that may irretrievably damage SpatiaLight's ability to function as a going concern.

46. SpatiaLight is entitled to preliminary and permanent injunctive relief against further conversion of SpatiaLight shares by Defendants, in that:

a) SpatiaLight will be irreparably harmed if Defendants are able to assume control of its common stock and thus take control of SpatiaLight, as the result of Defendants' market manipulation aimed at driving down the SpatiaLight stock's value below that which would have occurred under ordinary market conditions;

b)     SpatiaLight's damages cannot be remedied by monetary relief. Acquisition of corporate control of SpatiaLight at the instant time will completely alter the corporate policy of the company, the business plan of the company and the manner in which the company operates. These changes cannot be unwound and a specific dollar value cannot be placed on them, such that any monetary relief afforded in the future will be an insufficient remedy;

c)     The balance of interests weighs heavily in favor of granting this injunction. Smithfield and Portside may convert their shares at a later date if it is able to prove that it has acted in good faith. The value of the SpatiaLight stock has not varied so substantially in recent months that any great loss will accrue to Defendants by later conversion. On the other hand, each and every employee, creditor and shareholder of SpatiaLight has a vested interest in seeing that Defendants do not illegally obtain control of the company. Under these circumstances, there is a substantial reason for granting injunctive relief, and none in withholding it;

d)     The public interest will not be disserved by the granting of injunctive relief, but will indeed be enhanced. The SEC Rules–designed to preserve the public interest–exist to prevent entities from acquiring control of corporations through illegal means. Defendants have attempted to obtain such control through such

means. Thwarting that attempt will enhance the public interest and will preserve the public policies underlying the SEC Rules.

**WHEREFORE**, based upon the foregoing, SpatiaLight, Inc. respectfully requests that the Court enter judgment in favor of SpatiaLight as follows:

a) On Count One, awarding SpatiaLight all damages to which it is entitled as a result of the market manipulation by Smithfield and Portside;

b) On Count Two, issuing an order preliminary and–after due proceedings are had–permanently enjoining Smithfield and Portside from converting any of their Debentures into shares of SpatiaLight common stock, and;

c) Granting SpatiaLight all general and equitable relief to which it is entitled.

**OF COUNSEL:**

_____   _____
**SMITH & FAWER, L.L.C.**                **LAW OFFICES OF DAVID M. SCHREIER**
Randall A. Smith (#2117)                David M. Schreier (DS2112)
Michael W. Hill (#25415)                274 Madison Avenue, 19th Floor
201 St. Charles Avenue, Suite 3702      New York, New York 10016
New Orleans, Louisiana 70170            Tel: 212-889-686
Tel: 504-525-2200

**COUNSEL FOR SPATIALIGHT, INC.**